UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARK W. KALINOWSKY,<br><br>              Plaintiff,<br><br>       v.<br><br>ALEJANDRO MAYORKAS, et al.,<br><br>              Defendants. | Case No.  22-cv-07209-VKD<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 19, 22 |

Plaintiff Mark Kalinowsky is a Canadian national who applied for an immigrant visa under the EB-5 immigrant investor visa program.  He alleges that the U.S. Citizenship and Immigration Services ("USCIS") has unreasonably delayed adjudication of his visa application, known as a Form I-526 petition.  He seeks review of defendants' action under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 555(b), 706(1), and an order compelling USCIS to adjudicate his petition with 30 days under the Mandamus Act, 28 U.S.C. § 1361.[1]

The parties have filed cross motions for summary judgment.  Dkt. Nos. 19, 22.  On August 29, 2023, the Court held a hearing on the motions.  Dkt. No. 33.  Upon consideration of the moving and responding papers, as well as the oral arguments presented, the Court denies Mr. Kalinowsky's motion for summary judgment and grants USCIS's cross motion for summary judgment.

---

[1] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 11, 15.

United States District Court
Northern District of California

1

## I.     BACKGROUND

2          Unless otherwise indicated, the following facts are not genuinely disputed.

3          ### A.     EB-5 Immigrant Investor Visa Program

4          The EB-5 immigrant investor visa program provides a path for immigrant investors and

5    their family members to obtain lawful permanent residence in the United States if they invest in

6    new commercial enterprises ("NCEs") that creates full-time employment for at least 10 U.S.

7    workers.  *See* 8 U.S.C. § 1153(b)(5).  Successful applicants and their family members receive

8    conditional permanent resident status.  8 U.S.C. § 1186b(a).  After two years, the investor may

9    petition for removal of the conditions and obtain full lawful permanent resident status by

10   demonstrating that their investment meets the program's requirements.  *See id.* § 1186b(c).

11   However, if USCIS determines that the investment does not meet the EB-5 program's

12   requirements or is fraudulent, then the investor's conditional status can be terminated.  *Id.* §

13   1186b(b).

14         At the time relevant to these proceedings, if a non-citizen investor chose to invest in an

15   NCE in a "targeted employment area,"[2] he or she would have to invest at least $500,000.[3]  8

16   U.S.C. § 1153(b)(5)(C).  One way that a non-citizen may participate in the EB-5 program is by

17   investing in a designated "Regional Center" NCE.  *See* Dep't of Commerce, et al., Appropriations

18   Act, 1993, Pub. L. No. 102-395, § 610, 106 Stat. 1828, 1874-75 (1992) ("Appropriations Act of

19   1993").  Multiple investors may invest in the same Regional Center, and together they may satisfy

20   the employment creation requirement by establishing that the investment will create a sufficient

21   number of jobs indirectly, as demonstrated by accepted, reasonable methodologies.[4]  *See* 8 C.F.R.

22   _____

23   [2] "Targeted employment area" is defined as "a rural area or an area which has experienced high
     unemployment (of at least 150 percent of the national average rate)."  8 U.S.C.
24   § 1153(b)(5)(B)(ii).

25   [3] In March 2022, the minimum amount required for investment in an NCE in a targeted
     employment area was increased to $800,000.  *See* EB-5 Reform and Integrity Act of 2022, Pub. L.
26   No. 117-103, § 102, 136 Stat. 49, 1070.

27   [4] By contrast, a non-citizen investor relying on a "Direct" EB-5 petition must show that his or her
     NCE investment directly results in the creation of full-time employment of at least 10 U.S.
28   workers by demonstrating that the NCE directly hired at least 10 full-time employees.  8 U.S.C.
     § 1153(b)(5)(A)(ii).

2

§ 204.6(m)(7)(ii).

The Regional Center program was temporary and its continuation required reauthorization by Congress.  *See* Appropriations Act of 1993 § 610(b).  Since its advent in 1992, the program has been reauthorized many times. Dkt. No. 19-1 at ECF 28[5] (Ex. B), Holly Straut-Eppsteiner, *Congressional Research Service Report on the EB-5 Immigrant Investor Visa* (updated Dec. 16, 2021).  The Regional Center program is now the principal means by which immigrant investors obtain EB-5 visas.  *See id.* (noting that 96% of EB-5 visas issued in fiscal year 2019 were under the Regional Center program).

Congressional authorization for the Regional Center program expired in accordance with its then-existing terms on June 30, 2021.  *See* Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, div. O, title I, § 104, 134 Stat. 1182, 2148; *Da Costa v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1, 2022 WL 17173186, at *2 (D.D.C. 2022).  Once the program lapsed, USCIS stopped adjudicating Regional Center-based Form I-526 petitions.  *Zhu v. U.S. Dep't of State*, No. 22-55129, 2022 WL 17102357, at *1 (9th Cir. Nov. 22, 2022).  USCIS placed then-pending petitions on hold, allowing applicants to maintain their place in the adjudication workflow.  *See* Dkt. No. 22-3 at ECF 99-100 (Ex. 11) (USCIS, EB-5 Reform & Integrity Act of 2022 Listening Session (Apr. 29, 2022)).

In March of 2022, President Biden signed a Consolidated Appropriations Act, *see* Pub. L. No. 117-103, which included the EB-5 Reform and Integrity Act of 2022 and provided authority for a reformed Regional Center program through September 30, 2027.  *Da Costa*, 2022 WL 17173186, at *2; 8 U.S.C. § 1153(b)(5)(E)(i).  The EB-5 Reform and Integrity Act repealed prior legislation authorizing the Regional Center program, but included certain "grandfathering" provisions which permit adjudication of Form I-526 petitions filed before March 15, 2022, according to the eligibility requirements in place at the time such petitions were filed.  *See* Dkt. No. 22-3 at ECF 41 (Ex. 6).  Since enactment of this new legislation, USCIS has resumed processing Regional Center-based Form I-526 petitions filed on or before expiration of the

---

[5] The Court uses "ECF" to refer to the pagination of electronically filed documents, rather than a document's internal pagination.

3

statutory authorization of the legacy Regional Center program.  *Id.*

USCIS has a backlog of pending Form I-526 petitions.  In recent years, the pace of the agency's processing of petitions has declined and the backlog has grown.  *See Da Costa v. Immigr. Inv. Program Off.*, --- F.4th ---, 2023 WL 5313526, at *3 (D.C. Cir. 2023) ("[T]he data show increasingly slow adjudications, with a markedly increased lag by Fiscal Year 2020.").  Over the last five years, the median processing time for a Form I-526 petition has steadily grown from 17.9 months in fiscal year 2018[6] to 50.3 months in fiscal year 2023.  Historical National Median Processing Time (in Months) for All USCIS Offices for Select Forms by Fiscal Year, https://egov.uscis.gov/processing-times/historic-pt (last visited Sept. 15, 2023); *Da Costa*, 2023 WL 5313526, at *3 (citing the same data).  USCIS currently has fewer employees reviewing Form I-526 petitions now than it did before the backlog accrued and adjudicates fewer petitions each year.  Dkt. No. 22-1 ¶¶ 7, 8 (reporting 67 employees in fiscal year 2018 and 32 employees today); *Jain v. Jaddou*, No. 21-CV-03115-VKD, 2023 WL 2769094, at *2 (N.D. Cal. Mar. 31, 2023) ("USCIS completed adjudication of over 12,000 petitions in FY 2017 and over 15,000 petitions in FY 2018, but adjudicated only 4,492 petitions in FY 2019 and only 3,421 petitions in FY 2020.").

**B.    USCIS's "Visa Availability" Review Process**

Previously, USCIS reviewed and adjudicated Form I-526 petitions on a "first in, first out" basis—i.e., the petitions were processed in the order of filing.  Dkt. No. 22-3 at ECF 20 (Ex. 3).  In the spring of 2020, USCIS announced the adoption of a "visa availability" approach to processing these petitions.  *Id.*  This approach takes into account the availability of visas for an immigrant's country of chargeability (typically, their country of birth) and gives highest priority to petitions for which visas are available or will be soon.[7]  *See id.*  After considering the availability

---

[6] The fiscal year runs from October 1 of one year and ends on September 30 of the following year. Glossary Definition of "Fiscal year," U.S. Citizenship and Immigration Services, https://www.uscis.gov/tools/glossary.

[7] The Immigration and Nationality Act places annual limits on the number of employment-based visas allocated to immigrants from each country of chargeability.  *See* 8 U.S.C. § 1152.  For some countries, primarily China and India, the number of applications has exceeded the number of visas available for some time, leading to major backlogs, including in the EB-5 program.  *See* Dkt. No. 22-3 at ECF 14-16 (Ex. 2); Dkt. No. 22-1 ¶ 17.  The visa availability determination is made by referring to the current State Department Visa Bulletin.  Dkt. No. 22-1 ¶ 17

of visas, USCIS then considers several other factors, including whether the relevant NCE has already been reviewed and when the petition was filed (i.e., "first in, first out").  Dkt. No. 22-3 at ECF 22-25 (Ex. 4) ("Questions and Answers: EB-5 Immigrant Investor Program Visa Availability Approach").

Using the "visa availability" approach, USCIS sorts petitions into three queues.  Dkt. No. 22-1 ¶ 18.  The first queue contains petitions where a visa is not available or soon to be available.  *Id.*  Once USCIS determines that a visa is available or might be available soon, the petition moves into either the second queue, if the agency has not already reviewed the NCE to which the petition relates, or the third queue, if the agency has already reviewed the relevant NCE.  *Id.*  When USCIS completes review of an NCE related to petitions in the second queue, all petitions related to that NCE are transferred to the third queue.  *Id.*  Petitions in the third queue are then reviewed on a first in, first out basis.  *Id.*

In July of 2023, USCIS changed the way it reviews petitions in the third queue to allow for a single examiner to review multiple petitions related to the same NCE at one time, using the date of the oldest filed petition related to the NCE to set the order of review.  Dkt. No. 30-1 at ECF 4-5 (Ex. 23).

**C.      Plaintiff's Form I-526 Petition**

Mr. Kalinowsky filed a Form I-526 petition on November 19, 2019 as part of the EB-5 Regional Center program.  Dkt. No. 1 ¶ 16.  Specifically, he invested $500,000 in a real estate development project in Oakland, California associated with the Behring Regional Center.  *See* Dkt. No. 19-1 at ECF 2 (Ex. A).  Mr. Kalinowsky sought visas for himself, his wife, and their two children.  *Id.* at ECF 21.

Mr. Kalinowsky resides in San Jose, California.  *Id.* at ECF 14.  He holds an E-2 treaty investor visa, which is valid until May 2024.  Dkt. No. 22-1 ¶ 28.  Mr. Kalinowsky has been able to obtain work and travel authorization while his Form I-526 petition is pending.  *Id.*

As of June 2023, Mr. Kalinowsky's petition was number 2,781 in USCIS's third queue,

United States District Court
Northern District of California

5

1   meaning that there is a visa available or soon to be available, and USCIS has already reviewed the

2   NCE related to the petition.  *Id.* ¶ 24.  At the hearing, the government reported that his petition had

3   advanced to approximately number 1,700 in the third queue.  Dkt. No. 33 (audio recording at

4   10:22 a.m.).

5   **II.    DISCUSSION**

6       **A.    Legal Standard**

7       Mr. Kalinowsky asserts claims under both the Mandamus Act, 28 U.S.C. § 1361, and the

8   APA, 5 U.S.C. § 706(1), based on the same factual allegations.  *See* Dkt. No. 1.  He seeks

9   essentially the same relief under both claims.  *Id.* ¶¶ 32-47.  In these circumstances, the Court

10  considers Mr. Kalinowsky's claims that USCIS has unreasonably delayed adjudication of his

11  Form I-526 petitions using the *TRAC* framework described below.  *See Vaz v. Neal*, 33 F.4th 1131,

12  1135-36 (9th Cir. 2022) (APA); *In re Nat. Res. Def. Council, Inc.*, 956 F.3d 1134, 1138 (9th Cir.

13  2020) (mandamus).

14      A party may move for summary judgment on a "claim or defense" or "part of . . . a claim

15  or defense."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when, after adequate

16  discovery, there is no genuine issue as to any material facts and the moving party is entitled to

17  judgment as a matter of law.  *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Material

18  facts are those that might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

19  242, 248 (1986).

20      Here, USCIS has produced a set of "agency documents" to Mr. Kalinowsky.  Dkt. No. 18.  In

21  addition, USCIS relies on supporting declarations of Alissa Emmel, the chief of its Immigrant Investor

22  Program Office, and Jan Lyons, a senior advisor in the same office.  Dkt. No. 22-1; Dkt. No. 29-1.

23  Mr. Kalinowsky has not indicated that he requires any discovery pursuant to Rule 56(d).  *See* Dkt. No.

24  4 ¶ 4.  He does not rely on any supporting declarations.  Neither party identifies any material facts that

25  are in dispute.

26      "When simultaneous cross-motions for summary judgment on the same claim are before

27  the court, the court must consider the appropriate evidentiary material identified and submitted in

28  support of both motions, and in opposition to both motions, before ruling on each of them."  *Fair*

United States District Court
Northern District of California

*Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001). Where the legal issue central to both motions is the same, the court need not organize its analysis of the cross-motions in separate sections. *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015).

### B.   Unreasonable Delay

Mr. Kalinowsky claims that USCIS has unreasonably delayed in processing his Form I-526 petition.

The APA provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Where an agency has a "clear, certain, and mandatory duty" to take a discrete action, a court may compel the agency to act where it has "unreasonably delayed" in performing that duty. 5 U.S.C. § 706(1); *Vaz*, 33 F.4th at 1136. A court may grant mandamus relief "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The parties do not dispute that USCIS has a clear, mandatory duty to adjudicate Mr. Kalinowsky's Form I-526 petition. Dkt. No. 19 at 11-12; Dkt. No. 22 at 10-11. The question presented is whether the agency has unreasonably delayed that adjudication.

The Ninth Circuit requires a court to consider the six factors set out in *Telecommunications Research & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"), in evaluating whether agency action has been unreasonably delayed. *Vaz*, 33 F.4th at 1137. The *TRAC* factors are: "(1) the time agencies take to make decisions must be governed by a 'rule of reason;' (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and (6) the court need not 'find any impropriety lurking behind agency lassitude in order to hold that agency action is

1    unreasonably delayed.'" *Id.* (quoting *TRAC*, 750 F.2d at 80) (cleaned up).

2        The Court addresses each of the *TRAC* factors below.

3                    **1.    First *TRAC* Factor:  Rule of Reason**

4        The most important *TRAC* factor is the first factor, the "rule of reason."  *In re Nat. Res.*

5    *Def. Council, Inc.*, 956 F.3d 1134, 1139 (9th Cir. 2020).

6        Mr. Kalinowsky argues that USCIS does not use a rule of reason in adjudicating Form I-

7    526 petitions and that the agency's 45-month delay in adjudicating his petition is per se

8    unreasonable.  *See* Dkt. No. 19 at 14-17.  USCIS argues that its "visa availability" review process

9    for adjudicating Form I-526 petitions is a rule of reason that provides a fair, rational, and orderly

10   approach to completing the required agency action.  Dkt. No. 22 at 11-17.  In addition, USCIS

11   observes that no court has concluded that a 45-month delay is processing a Form I-526 petition is

12   per se unreasonable.  *Id.* at 12.

13       Mr. Kalinowsky argues that USCIS "does not use a true, or stable and definable[] Visa

14   Availability Approach" and "redefine[s] and conflate[s] the definition of whether a visa is

15   available[] by adding other factors."  Dkt. No. 19 at 15.  In particular, he contends that he had a

16   visa available during the lapse in the regional center program's statutory authorization in 2021, but

17   USCIS improperly stopped processing his application during that time, and thus, he argues,

18   USCIS did not follow the "pure visa availability approach" it claims to follow.  *Id.*  USCIS

19   responds that it "does not employ a 'pure' visa availability approach" and that its decision to stop

20   processing regional center-based Form I-526 petitions in 2021 was necessary due to the lapse in

21   statutory authorization for the program.  Dkt. No. 22 at 13, 16.

22       Mr. Kalinowsky's argument is not persuasive.  USCIS's decision to stop processing Form

23   I-526 petitions during the lapse in statutory authorization (while preserving applicants' place in the

24   adjudication workflow) is not inconsistent with application of a rule of reason.  Other district

25   courts addressing this same argument have reached the same conclusion.  *See Da Costa*, 2022 WL

26   17173186, at *6 (collecting cases).  Moreover, as the USCIS observes, every district court that has

27   considered USCIS's "visa availability" approach to review of Form I-526 petitions has determined

28   that the approach satisfies the requirements for a rule of reason.  *See, e.g.*, *Ferro v. Mayorkas*, No.

United States District Court
Northern District of California

2:23-CV-02033-SB-MRW, 2023 WL 4291841, at *3 (C.D. Cal. June 16, 2023); *Sheiner v. Mayorkas*, No. 22-CV-04871-SVK, 2023 WL 3568088, at *7 (N.D. Cal. Apr. 14, 2023); *Devani v. U.S. Citizenship & Immigr. Servs.*, No. 22-CV-01932 (DLF), 2023 WL 2913645, at *3 (D.D.C. Apr. 12, 2023); *Jain*, 2023 WL 2769094, at *6; *Ramesh v. Mayorkas*, No. 21-CV-00653-DMR, 2023 WL 5667887, *5-7 (N.D. Cal. Feb. 7, 2023); *Bega v. Jaddou*, No. CV 22-02171 (BAH), 2022 WL 17403123, at *6-*7 (D.D.C. Dec. 2, 2022); *Da Costa*, 2022 WL 17173186, at *8; *Mokkapati v. Mayorkas*, No. 21-1195, 2022 WL 2817840, at *6 (D.D.C. July 19, 2022); *Desai v. U.S. Citizenship & Immigr. Servs.*, No. CV 20-1005 (CKK), 2021 WL 1110737, at *5 (D.D.C. Mar. 22, 2021); *Thakker v. Renaud*, No. 20-1133 (CKK), 2021 WL 1092269, at *6 (D.D.C. Mar. 22, 2021); *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 51 (D.D.C. 2021).  And on August 18, 2023, the D.C. Circuit concluded that the USCIS employs a rule of reason when it uses the "visa availability" approach to adjudicate Form I-526 petitions.  *Da Costa*, 2023 WL 5313526, at *6.[8] Mr. Kalinowsky does not attempt to distinguish any of this authority in his briefing, and he also was unable to distinguish the D.C. Circuit's decision in *Da Costa* when questioned about it during the hearing.  *See* Dkt. No. 19 at 14-17; Dkt. No. 24 at 10; Dkt. No. 33 (audio recording at 10:13 a.m.).

Mr. Kalinowsky's other argument, that a 45-month delay in adjudicating his Form I-526 petition, is also unsupported.  The authority on which he relies is inapposite, as it does not concern the adjudication of Form I-526 petitions*. See* Dkt. No. 19 at 14 (citing *Aslam v. Mukasey*, 531 F. Supp. 2d 736, 737 (E.D. Va. 2008); *Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1133 (D. Ariz. 2008) (I-485 applications); *Alkenani v. Barrows*, 356 F. Supp. 2d 652, 653 (N.D. Tex. 2005) (application for naturalization)).  He also concedes that no other court has found a similar delay in adjudicating a Form I-526 petition per se unreasonable and several courts have found similar or even greater delays not unreasonable.  Dkt. No. 33 (audio recording at 10:02 a.m.-10:04 a.m.).

---

[8] The D.C. Circuit's decision is not binding on this Court, but it is particularly persuasive in this context as the Ninth Circuit has looked to the "more developed law of the District of Columbia Circuit" in its unreasonable delay decisions.  *In re Nat. Res. Def. Council, Inc.*, 956 F.3d at 1139 (quoting *In re A Community Voice*, 878 F.3d 779, 782 (9th Cir. 2017)).

United States District Court
Northern District of California

1   *See also Jain*, 2023 WL 2769094, at *3, 6 (between 40 and 48 months); *Devani*, 2023 WL

2   2913645, at *4 (41 months); *Sheiner*, 2023 WL 3568088, at *8 (41 months); *Da Costa*, 2023 WL

3   5313526, at *7 (rejecting the claim that "four-and-one-half years to process an immigration

4   petition is per se unreasonable") (cleaned up).  *Cf. Beyene v. Napolitano*, No. C 12-01149 WHA,

5   2012 WL 2911838, at *6-7 (N.D. Cal. July 13, 2012) (5-year delay in processing I-485 application

6   not unreasonable when plaintiff already resided in the United States and provided no evidence of

7   financial harm).

8        Accordingly, the Court concludes that the first *TRAC* factor weighs in favor of USCIS.

9        **2.    Second *TRAC* Factor:  Congressional Indication**

10       The second *TRAC* factor considers whether Congress has provided an indication of the

11   speed with which it expects an agency to act.  *TRAC*, 750 F.2d at 80.  Here, the parties agree that

12   Congress has not mandated a time limit for adjudication of Form I-526 petitions.  Dkt. No. 19 at

13   14; Dkt. No. 22 at 17.  They disagree, however, about whether a 45-month delay is inconsistent

14   with Congress's purpose in enacting the EB-5 immigrant investor program.  In particular, Mr.

15   Kalinowsky argues that extended delays erode public confidence in the program and undermine its

16   effectiveness by discouraging potential immigrant investors from investing their money in the

17   United States.  Dkt. No. 19 at 16; Dkt. No. 33 (audio recording at 10:19 a.m.-10:20 a.m.).

18       On at least two occasions, Congress has given some indication of its expectations

19   regarding the time frame in which USCIS will process Form I-526 petitions.  First, in 2000,

20   Congress enacted a statute authorizing funds to eliminate a then-existing backlog of certain

21   immigration petitions.  The statute provides:  "It is the sense of Congress that the processing of an

22   immigrant benefit application should be completed not later than 180 days after the initial filing of

23   the application[.]"  8 U.S.C. § 1571(b).  Second, in the EB-5 Reform and Integrity Act of 2022,

24   Congress directed USCIS to complete a fee study and to adjust the fees it charges "to achieve

25   efficient processing."  Pub. L. No. 117-103 § 106, 136 Stat. 49, 1103-04 (Mar. 15, 2022).

26   Specifically, Congress required USCIS to set fees for services provided under the immigrant

27   investor programs "at a level sufficient to ensure the full recovery only of the costs of providing

28   such services, including the cost of attaining the goal of completing adjudications, on average, not

later than" 90 to 240 days, depending on the nature of the petition.  *Id.*

The Ninth Circuit has held that a "sense of Congress" provision "amounts to no more than non-binding, legislative dicta" and "creates no enforceable federal rights."  *Yang v. Cal. Dep't of Soc. Servs.*, 183 F.3d 953, 958, 961-62 (9th Cir. 1999).  However, the second *TRAC* factor does not require that the Court consider only mandated statutory time limits.  *See Desai*, 2021 WL 1110737, at *6.  This Court has previously concluded that "[w]ith respect to the Form I-526 petitions at issue, Congress has not been silent, but has at least indicated that the agency's goal should be to adjudicate these provisions in a matter of months, not years."  *Jain*, 2023 WL 2769094, at *7 (citing *Uranga v. U.S. Citizenship & Immigr. Servs.*, 490 F. Supp. 3d 86, 103 (D.D.C. 2020)) ("[Section 1571(b)] is certainly an indication of what the legislature had in mind – after all, Congress had the option of saying nothing on the subject at all.").  *See also Da Costa*, 2023 WL 5313526, at *9 ("[E]ven though the language [of Section 1571(b)] is insufficient to set a deadline, we can look to Congress's aspirational statement as a ruler against which the agency's progress must be measured.") (cleaned up).

Here, Mr. Kalinowsky's Form I-526 petition has been pending for over 45 months.  Even if the Court excludes the nine months during which the lapse in Congressional authorization prevented USCIS from acting on pending petitions, the delay is still 36 months.  Moreover, it is undisputed that USCIS's processing time has increased dramatically in recent years.  While USCIS offers several explanations for these delays, including staff attrition, the COVID-19 pandemic, spending cuts, competing priorities, as well as the lapse in statutory authorization, Dkt. No. 22 at 14-16; Dkt. No. 22-1 ¶¶ 9-14, the agency's failure to devote sufficient resources to performing its mandatory duty to adjudicate these petitions—or Congress's failure to appropriate sufficient funds for that purpose—does not relieve the agency from its responsibility to act within a reasonable time.  *See Jain*, 2023 WL 2769094, at *7; *Da Costa*, 2023 WL 5313526, at *9 ("We do not make light of the troubling backlog of petitions waiting for USCIS adjudication, nor does the increasingly sluggish pace of adjudication escape our attention. Those problems are serious.").

As noted above, in the context of agency action on requests for immigration benefits, courts in the Ninth Circuit have found delays of four years or less not unreasonable.  *See Islam v.*

*Heinauer*, 32 F. Supp. 3d 1063, 1071 (N.D. Cal. 2014) (collecting cases); *Ramesh*, 2023 WL 5667887, at *7-8. However, this Court agrees with those courts that have concluded delays of this magnitude do not compare favorably to available indications of Congressional expectations. *See Keller Wurtz v. U.S. Citizenship & Immigr. Servs.*, No. 20-CV-2163-JCS, 2020 WL 4673949, at *5 (N.D. Cal. Aug. 12, 2020) ("USCIS is correct that [the 8 U.S.C. 1571(b)] timeline is not mandatory, but it nevertheless weighs in favor of finding the delay here—approximately four times Congress's stated goal—to be unreasonable."); *Islam*, 32 F. Supp. 3d at 1073 ("While the language of § 1571(b) is not mandatory, it nonetheless suffices to tip the second *TRAC* factor in [plaintiff's] favor."); *see also Desai*, 2021 WL 1110737, at *6 (finding that the second *TRAC* factor weighed in favor of plaintiff in light of section 1571(b), while concluding that plaintiff failed to state an unreasonable delay claim in consideration of the remaining factors); *Da Costa*, 2023 WL 5313526, at *9 ("This factor somewhat favors Plaintiffs, as they have waited longer than 180 days. But the delay has not reached the level of disproportionality we have previously held sufficient to grant relief.").

As it is undisputed that Mr. Kalinowsky has waited for *years*, well beyond the Congressional indication of the average time an adjudication should reasonably require, the second *TRAC* factor weighs in favor of Mr. Kalinowsky.

### 3.    Third and Fifth *TRAC* Factors:  Nature of Interests

The third and fifth *TRAC* factors overlap, requiring this Court to consider whether Mr. Kalinowsky's claim implicates human health and welfare, as well as the nature and extent of the interests prejudiced by the delay. *TRAC*, 750 F.2d at 80.

Mr. Kalinowsky contends that these factors weigh in his favor, claiming that "his family's plans for the future remain uncertain and his investment remains at extraordinary risk." Dkt. No. 19 at 17. He argues that "[t]he longer this process takes, the greater [the] uncertainty of ultimate success [is]," noting that USCIS's delays in adjudicating his Form I-526 petition expose both his investment and visa application to a greater risk from shifts in economic conditions and the potential that his regional center might back out of the project. *Id.* at 18. According to Mr. Kalinowsky, these risks affect both his investment and the immigration status he has so far

United States District Court
Northern District of California

1   obtained. *Id.* at 18-19.  Mr. Kalinowsky also claims his expectations have been disappointed,

2   citing "the general expectation . . . that participants [in the EB-5 program] would invest over a

3   two-year period, essentially the period of conditional residence, and then be eligible to receive

4   their investment monies back,." *Id.* at 18.  USCIS responds that Mr. Kalinowsky's allegations of

5   harm are vague and unsupported by the record.  Dkt. No. 22 at 19.  It also notes that other courts

6   have rejected health and welfare arguments from visa applicants who already reside in the United

7   States and allege only uncertainty in future immigration status and financial investments.  *Id.* at

8   19-20.

9          "Courts in this district have found that where a plaintiff does not show 'any immediate risk

10  of deportation or impairment to his physical, financial, or safety needs if his application is not

11  immediately adjudicated,' the third and fifth *TRAC* factors weigh in favor of denying relief."  *Jain*,

12  2023 WL 2769094, at *8 (quoting *Beyene*, 2012 WL 2911838, at *8).  Other courts analyzing

13  claims made by EB-5 applicants residing in the United States have arrived at similar conclusions.

14  *See, e.g.*, *Bega,* 2022 WL 17403123, at *7 ("Although the delay in processing their I-526 petitions

15  no doubt does impact plaintiffs' ability to plan for their future with certainty and to protect their

16  investments, these uncertainties are inherent in the immigration process and economic in nature,

17  and thus do not support a finding that the third and fifth *TRAC* factors weigh in plaintiffs' favor.").

18         Mr. Kalinowsky's allegations of uncertainty regarding his immigration status and inability

19  to make long term plans are not particularly compelling, and are indistinguishable from claims

20  other courts have found unsuccessful.  The investment risks Mr. Kalinowsky cites are "inherent in

21  the I-526 application process."  *Da Costa*, 2022 WL 17173186, at *10 (quoting *Fangfang Xu v.

22  Cissna*, 434 F. Supp. 3d 43, 54 (S.D.N.Y. 2020)) (cleaned up); *see also Tingzi Wang v. U.S.

23  Citizenship & Immigr. Servs.*, 375 F. Supp. 3d 22, 27 (D.D.C. 2019) ("[A]n investment made to

24  support an I-526 petition 'cannot be said to be at risk' if it was 'guaranteed to be returned,

25  regardless of the success or failure of the business.'") (quoting *In re Izummi*, 22 I. & N. Dec. 169,

26  184 (BIA 1998)); Dkt. No. 22-3 at ECF 65 (Ex. 10) (stating the same).  Moreover, Mr.

27  Kalinowsky's concerns about whether he will ultimately be able to obtain unconditional

28  permanent resident status do not weigh in his favor because there is no guarantee his petition will

United States District Court
Northern District of California

be successful. *See Tongatapu Woodcraft Hawaii, Ltd. v. Feldman*, 736 F.2d 1305, 1308 (9th Cir. 1984) ("An approved visa petition is merely a preliminary step in the visa application process. . . . It does not guarantee that a visa will be issued, nor does it grant the alien any right to remain in the United States.").

Accordingly, the Court concludes that the third and the fifth *TRAC* factors weigh in favor of USCIS.

### 4.   Fourth *TRAC* Factor:  Effect of Expediting Delayed Action

The fourth *TRAC* factor requires the Court to consider the effect of expediting adjudication of plaintiffs' applications "on agency action of a higher or competing priority."  *TRAC*, 750 F.2d at 80.

Mr. Kalinowsky argues that the effect of expediting review of his petition would be "minimal" on USCIS, as it only takes the agency approximately one working day to adjudicate a Form I-526 petition.  Dkt. No. 19 at 19.  USCIS argues that Mr. Kalinowsky is simply asking for "a judicial order putting [himself] at the head of the queue" and "produc[ing] no net gain."  Dkt. No. 22 at 21.  *See also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003).

The Court agrees with USCIS.  Mr. Kalinowsky seeks individual relief.  However, he does not claim that he was "singled out for slower adjudication" and instead "appear[s] similarly situated to all other Form I-526 petitioners who are waiting for USCIS to clear its petition backlog."  *See Da Costa*, 2023 WL 5313526, at *8.  And "[b]ecause USCIS prioritizes adjudication based on the date a petition was filed . . . a court order requiring USCIS to adjudicate [Mr. Kalinowsky's] Form I-526 petition[] would move it ahead of longer-pending petitions."  *Id.*

Most courts have found that the fourth *TRAC* factor weighs heavily in the agency's favor when a judicial order putting plaintiffs at the head of the line would simply move all others back one space and produce no net gain.  *See id.*; *Jain*, 2023 WL 2769094, at *9 (collecting cases). Moreover, the Ninth Circuit has cautioned against "interfer[ing] with [an agency's] discretion in prioritizing its activities and allocating its resources."  *Vaz*, 33 F.4th at 1138.  Mr. Kalinowsky offers no arguments distinguishing this authority.

14

1    Accordingly, the Court finds that the fourth *TRAC* factor weighs in favor of USCIS.

2              **5.      Sixth *TRAC* Factor:  Impropriety**

3          The sixth *TRAC* factor acknowledges that "the court need not find any impropriety lurking

4    behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750

5    F.2d at 80.  However, when an agency has delayed an action in bad faith, "by singling someone

6    out for bad treatment or asserting utter indifference to a congressional deadline," a court may find

7    that this impropriety justifies a finding of unreasonable delay. *Indep. Min. Co. v. Babbitt*, 105

8    F.3d 502, 510 (9th Cir. 1997) (quoting *In re Barr Labs.*, Inc., 930 F.2d 72, 76 (D.C. Cir. 1991)).

9          Mr. Kalinowsky does not allege that USCIS has acted in bad faith, but does comment that

10    "enticing investors to advance hundreds of thousands of dollars in the United States offering the

11    potential for permanent resident status . . . borders on unethical when compared to uncertain

12    timelines that put an immigrant's fate, and investment, in uncertain jeopardy." Dkt. No. 19 at 20.

13    USCIS responds that its processing times have been affected by several factors beyond its control,

14    including "employee attrition, revenue shortfalls, a nearly year-long hiring freeze, and the sunset

15    in statutory authorization related to the EB-5 Regional Center Program." Dkt. No. 22 at 23.

16          Based on this record, the Court finds no evidence of impropriety in USCIS's processing of

17    Form I-526 petitions generally or Mr. Kalinowsky's petition in particular.  Accordingly, the Court

18    concludes that this factor does not weigh in Mr. Kalinowsky's favor and does not alter the Court's

19    analysis based on the other *TRAC* factors. *See Bega*, 2022 WL 17403123, at *8.

20   **III.   CONCLUSION**

21          The Court concludes that the first, third, fourth, and fifth *TRAC* factors weigh in favor of

22    USCIS; the second factor weighs in favor of Mr. Kalinowsky; and the sixth factor does not impact

23    the Court's analysis.  On this summary judgment record, the Court concludes that the agency's

24    delay is not unreasonable as a matter of law and that Mr. Kalinowsky is not entitled to the relief he

25    seeks under the APA or the Mandamus Act.  Accordingly, the Court grants USCIS's motion for

26    summary judgment and denies Mr. Kalinowsky's motion for summary judgment.

27    //

28    //

United States District Court
Northern District of California

1          **IT IS SO ORDERED.**

2     Dated: September 20, 2023

3

4                                                            _Virginia K. DeMarchi_

5                                                            VIRGINIA K. DEMARCHI
                                                             United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28